# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **ALFRED DAVIS III,** ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 4:22-CV-00418-NCC |
| v. ) | |
| ) | |
| **RUSTY RATLIFF,**[1] ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner's Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 20). Respondent has filed a Response (Doc. 25), and Petitioner has filed a Traverse (Doc. 34). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. 17). After reviewing the case, the Court has determined that Petitioner is not entitled to relief. As a result, the Court will **DENY** the Petition and **DISMISS** the case.

### I.  PROCEDURAL HISTORY

On May 17, 2017, Petitioner was found guilty by a jury in the Circuit Court of St. Charles County, Missouri of assault in the first degree (Count I) and armed criminal action (Count II) (Doc. 25-1 at 457). On July 21, 2017, the Circuit Court sentenced Petitioner to a total sentence of 20 years in the Missouri Department of Corrections (Doc. 25-2 at 32). Petitioner appealed the judgment, raising two claims:

---

[1] Petitioner is currently incarcerated at Moberly Correctional Center in Moberly, Missouri. *See Missouri Dep't Corr. Offender Search*, https://web.mo.gov/doc/offSearchWeb/ offenderInfoAction.do (last visited September 16, 2025). Rusty Ratliff is the Warden. Therefore, Rusty Ratliff should be substituted as the proper party respondent. *See* 28 U.S.C. § 2254, Rule 2(a).

>   (1) The trial court erred in overruling Alfred Davis' motion for judgment of acquittal at the close of the State's evidence and entering sentence and judgment on the jury's verdict of guilty of first degree assault because … there was not sufficient evidence from which a reasonable trier of fact could have found beyond a reasonable doubt that Mr. Davis aided or encouraged Mr. Tate to commit that offense.
>
>   (2) The trial court erred in overruling Alfred Davis' motion for judgment of acquittal at the close of the State's case and entering sentence and judgment on the jury's verdict of guilty of armed criminal action because … the conviction of armed criminal action depended on the jury's finding of guilt on the charge of first degree assault, and the evidence to convict Mr. Davis of aiding or encouraging Mr. Tate in committing the assault was insufficient, as set out in Point I.

(Doc. 25-3 at 12-13). On December 26, 2018, the Missouri Court of Appeals for the Eastern District affirmed the judgment (Doc. 25-5). The Missouri Court of Appeals' mandate issued on January 16, 2019.

Petitioner filed his pro se motion for post-conviction relief on October 16, 2017. On April 16, 2019, counsel filed an amended motion for post-conviction relief on Petitioner's behalf raising six claims:

>   (1) Trial counsel failed to object to Jury Instruction Number 7 as an impermissible variance from the substitute information.
>
>   (2) Trial counsel failed to call Officer Michael Wilkins to impeach Stephanie Haynes's testimony about Mr. Davis making a prior threat.
>
>   (3) Trial counsel failed to investigate Mr. Davis's codefendant Dareion Tate, who would have provided a viable defense, and present his testimony to the jury.
>
>   (4) Trial counsel had a financial conflict of interest.
>
>   (5) Appellate counsel was ineffective for failing to raise the impermissible variance of Jury Instruction Number 7 on appeal.
>
>   (6) Appellate counsel was ineffective for failing to challenge the sufficiency of the evidence to convict on Count II.

After an evidentiary hearing, the motion court denied Petitioner's amended motion (Doc. 25-10 at 4). Petitioner appealed only the first and fifth claims (Doc. 25-8 at 10). On March 16, 2021,

2

the Missouri Court of Appeals for the Eastern District affirmed the motion court's denial of the motion (Doc. 25-10).  The Missouri Court of Appeals' mandate issued on April 8, 2021.

On April 8, 2022, Petitioner filed his Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in the State Custody (Doc. 1).  On November 16, 2022, he filed his Amended Petition (Doc. 20).  In his Amended Petition, he raises all his claims on direct appeal and in his post-conviction appeal.  In addition, he raises six claims not previously raised in state court.

## II.  DISCUSSION

In the habeas setting, a federal court is bound by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, to exercise only "limited and deferential review" of underlying state court decisions.  *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003).  Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407-08.  Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not

3

enjoy support in the record.  28 U.S.C. § 2254(e)(1); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004).

### A. Preserved Claims

#### i. Sufficiency of the Evidence (Ground One)

In Ground One, Petitioner asserts, as on direct appeal, that the evidence was insufficient to demonstrate he was guilty of first degree assault and accordingly, armed criminal action (Doc. 20 at 5).  Petitioner's main argument is that he did not have the requisite intent to be found guilty as an accomplice to Dareion Tate's assault of Garnell Carter (*id.*).  Respondent argues that this Court should defer to the Missouri Court of Appeals' decision denying Petitioner's claim (Doc. 25 at 14-18).  The Court agrees that Ground One should be denied.

"[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is … whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  This standard "gives full play to the responsibility of the trier of fact ... to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*.  In a habeas proceeding, AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation modified).  A habeas court "may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam).  Rather, a habeas court may only overturn a state court decision on the sufficiency of the evidence "if the state court decision was 'objectively unreasonable.'" *Id*. (quoting *Renico*, 559 U.S. at 773);

4

*accord Coleman v. Johnson*, 566 U.S. 650, 656 (2012) (per curiam) (a habeas court may grant relief only if the jury's finding of guilt, based on the evidence considered in the light most favorable to the prosecution, "was so insupportable as to fall below the threshold of bare rationality"). This Court's scope of review is "extremely limited." *Sera v. Norris,* 400 F.3d 538, 543 (8th Cir. 2005) (quoting *Whitehead v. Dormire,* 340 F.3d 532, 536 (8th Cir. 2003)).

A habeas court is not permitted to make its own determination of witness credibility, for that determination is for the state court trier of fact. *Robinson v. LaFleur*, 225 F.3d 950, 954 (8th Cir. 2000). Additionally, the testimony of a victim or an eyewitness is sufficient to sustain a conviction. *See Tibbs v. Florida*, 457 U.S. 31, 45 n. 21 (1982) (noting that, "[i]f the jury believed [the eyewitness' testimony], the State's presentation was more than sufficient to satisfy due process"); *Loeblein v. Dormire*, 229 F.3d 724, 726 (8th Cir. 2000) ("A victim's testimony is, by itself, normally sufficient to sustain a conviction.").

"It is well established that state law defines the elements of state-law crimes." *White v. Kemna*, No. 4:03 CV 415 FRB, 2006 WL 2802203, at *10 (E.D. Mo. Sept. 25, 2006) (citing *Fenske v. Thalacker,* 60 F.3d 478, 480 (8th Cir. 1995); *Turner v. Armontrout,* 845 F.2d 165, 168 (8th Cir. 1988)). The Missouri Court of Appeals set forth the following state law on accomplice liability:

> Under Section 562.041.1(2), an individual is criminally responsible for the conduct of another when "[e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he or she aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense." On review, we consider the totality of the circumstances, and the evidence need not show that the defendant committed every element of a crime. *State v. Shockley*, 98 S.W.3d 885, 890 (Mo. App. S.D. 2003). "Mere encouragement is enough and any evidence that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction." *Id.* "Affirmative participation may be proven by inference." *State v. Barker*, 442 S.W.3d 165, 169 (Mo. App. W.D. 2014) (internal quotation marks omitted). However, "[a] criminal conviction cannot be based upon probabilities

5

and speculation," and inferences must be "logical, reasonable and drawn from established fact." *Id.* at 174 (internal quotation marks omitted).

In terms of a culpable mental state, "to be found guilty as an accomplice, one must have the culpable mental state to have acted with the purpose of promoting the particular underlying offense." *Booker v. State*, 552 S.W.3d 522, 530 (Mo. banc 2018). "[T]he necessary intent may be based upon circumstantial evidence or inferred from surrounding facts such as the defendant's conduct before the act, from the act itself, and from the defendant's subsequent conduct." *Id.* (internal quotation marks omitted). "Associating with those who committed the crime before, during, or after its occurrence, acting as part of a show of force in the commission of the crime, attempting flight from the crime scene, or failing to assist the victim or seek medical help are all factors that can be considered in determining whether the defendant acted with the purpose to promote the underlying offense." *Id.* (internal quotation marks and brackets omitted). The required mental state "cannot be inferred in the absence of evidence that the accomplice *knew* a crime was being committed or was intended to be committed." *Barker*, 442 S.W.3d at 176 (emphasis in original) (internal quotation marks omitted).

(Doc. 25-5 at 3-4).

The Missouri Court of Appeals set forth the following relevant facts:

S.H. had been married to but was separated from Tate, the individual with whom Appellant was charged with acting in concert. A month or two before the events alleged, S.H. began seeing the victim, G.C. S.H. had also a full order of protection against Tate, which barred him from communicating with her. Instead, Tate sent surrogates, including Appellant, to contact S.H. on his behalf. On one occasion, shortly before the incident in question, Appellant came to S.H.'s house to see her on Tate's behalf while Tate waited in the car, and Appellant noticed G.C. inside S.H.'s house. In response to seeing G.C. in S.H.'s house, Appellant threatened to "beat his ass" and to "kill that n-----."

Then, early in the morning on the day of the incident in question, S.H. and G.C. were eating breakfast at a time S.H. would have normally been at work when there was a knock on the door. G.C. ran upstairs and indicated that Appellant was at the door. G.C. could see Appellant looking in G.C.'s car. S.H. ran to get her cellphone and her gun. Through the door, Appellant asked S.H. about a Netflix passcode. S.H. called 911. She could hear Tate saying, "Who [sic] mother f------ Camaro is this?" S.H. heard Appellant and Tate talking and then she heard banging on the door. S.H. was shouting at the 911 dispatcher that Tate had a gun, and Tate responded, "Damn right I got a gun."

Thereafter, a gunshot hit G.C. in the abdomen. G.C. pushed S.H. to the floor and was shot again as he tried to pull S.H.'s baby off of a bed to protect her. The second shot shattered his collar bone. Surveillance video showed both Appellant and Tate had guns on the scene. S.H. further described seeing a gun coming out of Appellant's jacket in the surveillance photos. When a neighbor

6

>heard two gunshots and looked outside, he saw two men wearing dark colored clothes, including hoodies with hoods up, running from the house, side by side, down the street to their vehicle, which was parked a few houses away and in the direction of a major thoroughfare. Within seconds, the two men jumped into the vehicle and took off.

(*id.* at 4-5).

The court held that the evidence was sufficient to support accomplice intent:

>Given this evidence, any inferences, to the extent they need to be made, are logical, reasonable and drawn from established facts and sufficient to establish that Appellant engaged in the conduct for the purpose of aiding the commission of the underlying crime and that he had the purpose to promote the offense. Appellant's culpable mental state can be inferred from his conduct before, during and after the crime. In particular, it can be inferred from Appellant's association with Tate prior to events in question, including the times that Appellant would act as a surrogate for Tate, who was not allowed contact with S.H. because of an order of protection, and from Appellant's own prior threats to beat and kill G.C. at a time when Tate was in the car waiting for Appellant.
>   With respect to the day in question, evidence and reasonable inferences showed that Appellant was on the crime scene with Tate and Appellant acted as part of the show of force because he was also seen with a gun. Tate and Appellant were talking outside the door just prior to the shots being fired, and affirmative participation can be reasonably inferred by Appellant's attempt to draw S.H. to the door by claiming an issue with a Netflix passcode. Appellant was also dressed to hide his identify, and after the gunfire, he fled alongside Tate and into a vehicle situated for a getaway onto a major thoroughfare. Given the totality of these circumstances and our standard of review, we find that there was sufficient evidence for any reasonable juror to have been convinced of Appellant's guilt beyond a reasonable doubt.

(*id.* at 5-6).

As on direct appeal, Petitioner raises several facts in support of his argument:

(1) his prior act of persuading Mr. Tate to leave Ms. Haynes' house in an incident that occurred a month before the shooting;

(2) the fact that he and Mr. Tate arrived in Mr. Tate's truck;

(3) he did not sound angry when he approached the door of Ms. Haynes' house the morning of the shooting;

(4) the surveillance video showed that Mr. Tate was alone in the backyard when he climbed up on the air conditioner and fired into the house; [and]

7

>(5) the state did not show that Mr. Davis knew Mr. Tate was going to fire his weapon through the back of the window of Ms. Haynes' house[.]

(Doc. 20 at 5-6).  None of these facts are persuasive.  Previously getting Tate to leave Stephanie Haynes' house does not negate accomplice intent in light of Haynes' testimony that, during that same encounter, Petitioner threatened to beat and kill Carter upon seeing him there.  *See* Doc. 25-1 at 205, 287.  That Petitioner did not sound angry when he approached Haynes' house the day of the assault also does not negate intent.  Not sounding angry was consistent with a calculated attempt on Petitioner's part to draw Haynes to the door.  Moreover, that Petitioner arrived in Tate's truck actually supports intent, as it is further evidence of their association prior to the assault.

Finally, it is immaterial that Tate alone shot into the house and that Petitioner may not have specifically known Tate was going to take that particular action.  *See State v. Wurtzberger*, 40 S.W.3d 893, 895 (Mo. banc 2001) ("Missouri has eliminated the distinction between principals and accessories, and now, all persons who act in concert to commit a crime are equally guilty."); *State v. Whittemore*, 276 S.W.3d 404, 407 (Mo. Ct. App. 2009) ("The evidence need not establish a defendant's specific knowledge of which particular crime his co-participant will commit [to support an accomplice liability theory]."); *State v. Workes*, 689 S.W.2d 782, 785 (Mo. Ct. App. 1985) (same) ("[I]f a defendant has embarked upon a course of criminal conduct with others, he is responsible for those crimes which he could reasonably anticipate would be part of that conduct.").  The Missouri Court of Appeals' decision was not contrary to or an unreasonable application of *Jackson v. Virginia*, nor was it an unreasonable determination of the facts.  *See Jablonski v. Hurley*, No. 4:12CV332 RLW, 2015 WL 847492, at *2–4 (E.D. Mo. Feb. 26, 2015)

(on habeas review, denying sufficiency claim challenging accomplice intent for first degree robbery). Ground One is denied.

### ii. Ineffective Assistance of Trial and Appellate Counsel as to Jury Instruction No. 7 (Grounds Two and Three)

In Grounds Two and Three, Petitioner asserts, as in his post-conviction case, that trial counsel should have objected to Jury Instruction No. 7 because it varied from the charging document, and that appellate counsel should have claimed that the trial court clearly erred in submitting Instruction No. 7 due to the variance (Doc. 20 at 11-14). Respondent argues that any objection would have been meritless and that the Missouri Court of Appeals reasonably applied federal law (Doc. 25 at 18-24). The Court agrees with Respondent.

The Missouri Court of Appeals set forth the following relevant facts:

Following the shooting, Appellant was charged under a theory of accomplice liability with first degree assault (Count I) and armed criminal action (Count II). Relevant to this appeal, the language charging Appellant under Count II stated:

> The Prosecuting Attorney of the County of St. Charles, State of Missouri, upon information and belief, charges that the defendant, acting in concert with another, in violation of Section 571.015, RSMo, committed the felony of armed criminal action, punishable upon conviction under Section 571.015, RSMo, in that on or about November 16, 2016, in the county of St. Charles, State of Missouri, the defendant committed the felony of assault, charged in Count I, all allegations of which are incorporated herein by reference, and the defendant committed the foregoing felony of assault by, with, and through the knowing use, assistance, and aid of a deadly weapon.

Significantly, Count II's verdict director, Jury Instruction No. 7, stated:

> A person is responsible for his own conduct and he is also responsible for the conduct of other persons in committing an offense if he acts with other person(s) with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other person(s) in committing it. As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

9

>> First, that Dareion Tate committed the offense of assault in the first degree, as submitted in Instruction No. 6, and
>> Second, that Dareion Tate committed that offense with the knowing use of a deadly weapon,
>
> then you are instructed that the offense of armed criminal action has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:
>> Third, that with the purpose of promoting or furthering the commission of that assault in the first degree, the defendant aided or encouraged Dareion Tate in committing the offense,
>
> then you will find the defendant guilty under Count II of armed criminal action.

(Doc. 25-10 at 3).

To succeed on a claim of ineffective assistance of counsel, Petitioner must show that 1) counsel failed to exercise the level of skill and diligence that a reasonably competent attorney would exercise in a similar situation, and 2) Petitioner was prejudiced by counsel's failure. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. To prove prejudice, Petitioner must show there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. The AEDPA provides "doubly" deferential review of ineffective assistance claims decided in state court. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so.") (citation modified).

The Missouri Court of Appeals held that any objection would not have been meritorious:

> We agree with the motion court's judgment and do not find an appreciable variance between the charging document and Jury Instruction No. 7. In Missouri, "it is well established that a defendant may be convicted based on the theory of accomplice liability, even though the defendant was charged with committing an offense personally." *State v. Hendren*, 524 S.W.3d 76, 82 (Mo. App. W.D. 2017). Our Supreme Court has stated: "Long ago, this Court eliminated the common law

10

> distinction between principals and accessories. All persons who act together with a common intent and purpose in the commission of a crime are equally guilty. An indictment or information may charge a defendant either as a principal or as an aider and encourager with the same legal effect." *State v. Isa*, 850 S.W.2d 876, 898 (Mo. banc 1993) (internal quotation marks and citations omitted).
>
> Observing the language of the charging document, it is clear the document charged Appellant under a theory of accomplice liability. Therefore, the language in Jury Instruction No. 7 that discusses Tate possessing a firearm still equally applies to Appellant because he is being charged as an accomplice. In *State v. Brewer*, we addressed a similar challenge when the appellant was charged as an accomplice with committing robbery and armed criminal action, while the indictment named the appellant as the individual who displayed a gun. 476 S.W.3d 321 (Mo. App. E.D. 2015). We held the distinction did not matter so long as the State proved one of the codefendants used a gun during the commission of the robbery. *Id.* at 325.
>
> Similarly, here the State proved Tate used a gun during the assault and proved Appellant aided Tate. Therefore, because Appellant was charged under a theory of accomplice liability, the distinction as to whether Appellant or Tate possessed the gun has no merit.

(*id.* at 7-8).

This Court agrees.  A variance only warrants reversal if it affects whether the accused received adequate notice.  *State v. Glass*, 136 S.W.3d 496, 520 (Mo. banc 2004); *see also Franklin v. White*, 803 F.2d 416, 417 (8th Cir. 1986) ("'[A] person's [sixth amendment] right to reasonable notice of the charge against him ... is incorporated in the Fourteenth Amendment to the United States Constitution and thus cannot be abridged by the states.'") (quoting *Goodloe v. Parratt*, 605 F.2d 1041, 1045 (8th Cir. 1979)).  Here, there is no question that Petitioner received adequate notice since Count II charged Petitioner as "acting in concert with another."  The Missouri Court of Appeals' decision was not contrary to or an unreasonable application of *Strickland v. Washington*.  Grounds Two and Three are denied.

11

### B. Defaulted Claims

#### i. Failure to Impeach Haynes and Carter with Police Report (Ground Four)

Respondent argues that Ground Four is procedurally defaulted (Doc. 25 at 25). The Court agrees. The failure to impeach Haynes with a September 16, 2016 police report ("report"), Doc. 20-1, was raised in Petitioner's amended motion but not in his post-conviction appeal. *See Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (claims not raised through post-conviction appeal are procedurally defaulted). Moreover, the failure to impeach Carter with the report was not raised at all in Petitioner's post-conviction case.

Petitioner cites *Martinez v. Ryan*, 566 U.S. 1 (2012) to excuse the default (Doc. 20 at 17). Respondent argues that *Martinez* does not apply where the default occurred during the post-conviction appeal (Doc. 25 at 26-27). The Court agrees that Petitioner's claim that trial counsel failed to impeach Haynes with the report cannot be revived under *Martinez*. *See Arnold*, 675 F.3d at 1087 (holding any error by Missouri post-conviction appellate counsel in failing to raise claims cannot constitute cause to excuse procedural default) (citing *Martinez*, 566 U.S. at 16 ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings …")); *see also Shinn v. Ramirez*, 596 U.S. 366, 380 (2022) (discussing the narrowness of *Martinez*).

Respondent further argues that Petitioner cannot present new evidence that was not presented in his state court proceedings (Doc. 25 at 26). "[U]nder § 2254(e)(2), a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel." *Shinn*, 596 U.S. at 382. Petitioner concedes that the post-conviction motion court sustained the state's hearsay objection to the report (Doc. 34 at 4). Thus, the report was not part of the state-court record, and

12

Petitioner has not asserted any exception pursuant to § 2254(e)(2). Petitioner's claim that trial counsel failed to impeach Carter with the report is also unavailing. *See Worthington v. Roper*, No. 4:05-CV-1102 CAS, 2008 WL 2977348, at *4 (E.D. Mo. July 29, 2008) (denying motion to expand record where post-conviction motion court sustained state's hearsay objection to affidavit). Ground Four is denied.

### ii. Failure to Present Evidence Petitioner Was Not Present for Shooting (Ground Five)

Petitioner failed to raise this claim in his post-conviction case, so it is procedurally defaulted. *See Arnold*, 675 F.3d at 1087. Petitioner cites *Martinez* to excuse the default (Doc. 20 at 18). In *Martinez*, the Supreme Court determined that ineffective assistance of counsel during initial-review collateral proceedings may establish cause for procedural default of a claim of ineffective assistance at trial:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. at 17. "To overcome the default, a prisoner must … demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14.

Petitioner asserts that surveillance video, introduced at trial as State's Exhibit 46, shows Petitioner did not enter the backyard until six seconds after Tate shot Carter, and that trial counsel was ineffective for failing to present that evidence to the jury (Doc. 20 at 17). Petitioner has not provided the Court with a copy of the video, instead stating Petitioner "will do so if the Court wishes to expand the record or holds an evidentiary hearing on this matter" (Doc. 34 at 5 n.2). Petitioner has not shown that expansion of the record or an evidentiary hearing is warranted. *See*

13

28 U.S.C. § 2254(e)(2). It is Petitioner's responsibility to provide this Court with the evidence supporting his claim, and Petitioner has failed to do so. *See Engle v. Isaac*, 456 U.S. 107, 134–35 (1982) (burden of justifying habeas relief rests with the prisoner). Moreover, as noted by Respondent, Exhibit 46 was admitted into evidence at trial and played for the jury (Doc. 25 at 32; Doc. 25-1 at 267). Finally, Petitioner was convicted under an accomplice liability theory. It is unlikely that trial counsel's identification of a six-second gap in the surveillance video between the shooting and Petitioner entering the backyard would have changed the outcome of the trial. Ground Five is denied.

### iii. Failure to Seek a Mistrial or Curative Relief Due to Prosecutor's Misrepresentation (Ground Six)

Petitioner asserts that trial counsel should have requested a mistrial or curative relief after the prosecutor, in requesting admission of two photos of Petitioner with a gun, erroneously told the trial court that they were *posted* to Petitioner's Instagram account the morning immediately after the shooting (Doc. 20 at 19; Doc. 25-1 at 228). Haynes had testified that she *first saw* the photos when someone sent them to her the morning immediately after the shooting, and she later testified that they were originally posted "way before" the shooting (Doc. 25-1 at 224, 289). Petitioner failed to raise this claim in his post-conviction case, so it is procedurally defaulted. *See Arnold*, 675 F.3d at 1087. Petitioner cites *Martinez* to excuse the default (Doc. 20 at 20). Respondent argues that Petitioner cannot show prejudice from the failure to seek a mistrial or curative relief, given that the prosecutor's statement was outside the hearing of the jury and other evidence was sufficient to convict Petitioner (Doc. 25 at 34-35). The Court agrees. It is telling that the photos were not mentioned in the Missouri Court of Appeals' decision denying Petitioner's sufficiency challenge. *See* Doc. 25-5. Ground Six is denied.

### iv. Failure to Submit Lesser Included Instruction (Ground Seven)

Petitioner argues that trial counsel should have submitted an instruction for the lesser included offense of second degree assault, which has a reckless mens rea (Doc. 20 at 21-22). Petitioner failed to raise this claim in his post-conviction case, so it is procedurally defaulted. *See Arnold*, 675 F.3d at 1087.  Petitioner cites *Martinez* to excuse the default (Doc. 20 at 24). Respondent argues that trial counsel should be presumed competent, especially in the absence of any testimony from trial counsel on this claim, and that there is no reasonable probability the jury would have convicted on a lesser offense (Doc. 25 at 35-36).  The Court agrees.  The evidence was clear that Tate committed first degree assault, and Petitioner was convicted under an accomplice liability theory.  Ground Seven is denied.

### v. Failure to Object to Jury Instruction No. 6 (Ground Eight)

Petitioner asserts that trial counsel should have objected to Jury Instruction No. 6, the verdict director for first degree assault under an accomplice liability theory, because it included a finding that Tate committed first degree assault even though Tate had not been tried yet (Doc. 20 at 25; Doc. 25-2 at 24).  Petitioner failed to raise this claim in his post-conviction case, so it is procedurally defaulted.  *See Arnold*, 675 F.3d at 1087.  Petitioner cites *Martinez* to excuse the default (Doc. 20 at 26).  Respondent argues that trial counsel cannot be ineffective for failing to object under a novel theory (Doc. 25 at 36-37).  The Court agrees.  Instruction No. 6 properly instructed the jury to find that Tate committed first degree assault beyond a reasonable doubt, and Petitioner cites no authority for the proposition that a principal must be tried first.  Ground Eight is denied.

### vi. Failure to Interview and Call Tate (Ground Nine)

Respondent argues that Ground Nine is procedurally defaulted (Doc. 25 at 25). The Court agrees. The failure to interview and call Tate was raised in Petitioner's amended motion, but not in his post-conviction appeal. *See Arnold*, 675 F.3d at 1087 (claims not raised through post-conviction appeal are procedurally defaulted). Petitioner cites *Martinez* to excuse the default (Doc. 20 at 28). Respondent argues that *Martinez* does not apply where the default occurred during the post-conviction appeal (Doc. 25 at 26-27). The Court agrees. *See Arnold*, 675 F.3d at 1087 (holding any error by Missouri post-conviction appellate counsel in failing to raise claims cannot constitute cause to excuse procedural default) (citing *Martinez*, 566 U.S. at 16 ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings …")); *see also Shinn*, 596 U.S. at 380 (discussing the narrowness of *Martinez*).

Petitioner further argues, based on his claim in Ground Eight, that *Schlup v. Delo*, 513 U.S. 298 (1995) applies to excuse the default (Doc. 34 at 7-8). To state a gateway innocence claim under *Schlup*, a petitioner must present new evidence of innocence. 513 U.S. at 316. Petitioner has not done so. Ground Nine is denied.

### III.  CONCLUSION

For the reasons stated above, the Court finds that Petitioner is not entitled to federal habeas relief. Furthermore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Khaimov v. Crist*, 297 F.3d 783, 785 (8th Cir. 2002) (citation modified). Thus, the Court will not issue a certificate of appealability. 28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED** and this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that a certificate of appealability will not be issued.  28 U.S.C. § 2253.

A separate Judgment shall be entered in accordance with this Memorandum and Order.

Dated this 25th day of September, 2025.

                                                  /s/ Noelle C. Collins
                                                  NOELLE C. COLLINS
                                                  UNITED STATES MAGISTRATE JUDGE